UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Robert R. Prunty, | ) )  |
| Plaintiff, | ) ) |
| v. | ) Civil No. 1:14-cv-02073 (APM) |
| Vivendi, *et al.*, | ) ) ) |
| Defendants. | ) ) ) |

## MEMORANDUM OPINION

**I.     INTRODUCTION**

After prevailing on their Motion to Dismiss Plaintiff's Amended Complaint, Defendants Vivendi SA, UMG Recordings, Inc., and The Island Def Jam Music Group have moved for an award of attorney's fees as to two categories of Plaintiff's claims: (1) his civil rights claims and (2) his copyright infringement claims. Defendants also seek an award for fees incurred in filing their Motion for Attorneys' Fees. The court has carefully scrutinized Defendants' Motion along with the supporting evidence. For the reasons explained below, it grants in part and denies in part Defendants' Motion for Attorneys' Fees and orders Defendant to pay $18,292.32.

**II.    BACKGROUND**

Briefly, the relevant facts are as follows. Plaintiff Robert R. Prunty filed a five-count[1] Amended Complaint against Defendants. Am. Compl., ECF No. 6. In Counts Four and Five, he asserted claims under two civil rights statutes, 42 U.S.C. § 1982 and 42 U.S.C. § 1985. The basic premise of those claims was that an adverse decision in a case before another judge of this court,

---

[1] There were originally six counts, but Plaintiff conceded that his first claim—Count One for violation of the Thirteenth Amendment—was not a viable stand-alone claim. *See* Mem. Op., ECF No. 28, at 2 n.3.

*Prunté v. Universal Music Grp.*, 699 F. Supp. 2d 15 (D.D.C. 2010), was the product of racial animus, in which Defendants conspired. *See* Mem. Op., ECF No. 28, at 2. In Counts Three and Six, Plaintiff advanced common law claims of fraud, alleging that Defendants also had conspired with the judge in *Prunté* to conceal the judge's alleged financial interests in Defendants Vivendi SA and UMG Recordings, Inc. *Id.* Finally, in Count Two, Plaintiff claimed that Defendants infringed his copyright to the lyrics of a particular song in violation of the Copyright Act, 17 U.S.C. §§ 101 *et seq. Id.*

The court granted Defendants' Motion to Dismiss the Amended Complaint in its entirety. *See* Mem. Op, ECF No. 28; *Prunty v. Vivendi*, 130 F. Supp. 3d 385 (D.D.C. 2015). Defendants then filed a Motion for Attorneys' Fees, arguing that, as the prevailing parties, they are entitled to an award of fees incurred in defending against Plaintiff's two civil rights claims and his single copyright claim. Mot. for Attorneys' Fees, ECF No. 30 [hereinafter Defs.' Mot.], at 1-2. Defendants also seek to recover attorney's fees arising out the fees petition that is now before the court. *Id.* at 1 n.1; Defs.' Reply Mem. in Supp. of Defs.' Mot. for Attorneys' Fees, ECF No. 36 [hereinafter Defs.' Reply], at 7.

## III. DISCUSSION

Defendants' Motion requires the court to resolve two issues. First, the court must determine the claims, if any, on which Defendants are entitled to an award of attorney's fees. Second, if a fees award is appropriate, the court must determine the proper amount.

### A. Defendants Need Not Have First Filed a Motion Under Rule 11

Before turning to the specific statutory grounds for an award of fees, the court takes up a threshold issue raised by Plaintiff. He argues, in essence, that Defendants are precluded from seeking an award of attorney's fees because they did not first file a motion for sanctions under

Federal Rule of Civil Procedure 11.  *See* Pl.'s Mot. in Opp'n to Defs.' Mot. for Attorneys' Fees, ECF No. 33 [hereinafter Pl.'s Opp'n], at 4-5.  There is, however, no such pre-filing requirement.  Rule 54(d) clearly states that "[a] claim for attorney's fees . . . must be made by motion" that specifies "the . . . statute, rule, or other grounds entitling the movant to an award."  Fed. R. Civ. P. 54(d)(2)(B)(ii).  Rule 54 contains no requirement that, as a precursor to seeking fees, a party must first file a motion under Rule 11.  Nor would such a requirement make sense in light of the text of the Rule 54(d), which plainly provides that fees may be sought under a "statute" *or* a "rule."  Fed. R. Civ. P. 54(d)(2)(B)(ii).  Therefore, the court rejects Plaintiff's assertion that Defendants' Motion should be denied because they did not first file a motion under Rule 11.

### B. Grounds for an Attorney's Fee Award

#### 1. Civil Rights Claims

Under 42 U.S.C. § 1988(b), a court may allow the "prevailing party" "[i]n any action or proceeding to enforce," as relevant here, Sections 1982 and 1985, "a reasonable attorney's fee."  The awarding of fees is limited to prevailing plaintiffs.  Congress enacted the statute in part to "protect defendants from burdensome litigation having no legal or factual basis."  *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 420 (1978).  Defendants in such civil rights actions can collect fees under Section 1988 "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation."  *Id.* at 421.

Here, Defendants' entitlement to fees is clear.  In dismissing Plaintiff's civil rights claims, the court found those claims to be "fanciful," "fantastic," and "factually frivolous."  Mem. Op. at 3.  Defendants easily have satisfied the prevailing-party standard under *Christianburg Garment*.  Accordingly, Defendants are entitled to attorney's fees incurred in defending Plaintiff's statutory civil rights claims.

*2. Copyright Claim*

Defendants' demand for attorney's fees on the dismissed copyright claim warrants greater analysis. The Copyright Act authorizes a district court, "in its discretion," to award "a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. In *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994), the Supreme Court observed that "[t]here is no precise rule or formula" for determining when to award fees under the Copyright Act. Instead, courts are directed to apply a list of nonexclusive factors, such as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 534 n.19 (citation and internal quotation marks omitted). When applying these factors courts must be "faithful to the purposes of the Copyright Act" and evenhanded in their application. *Id.; see also ZilYen, Inc. v. Rubber Mfrs. Ass'n*, 958 F. Supp. 2d 215, 218 (D.D.C. 2013) (applying *Fogerty*). Here, Defendants contend that an award of attorney's fees is warranted because Plaintiff's copyright claim was objectively unreasonable and because such an award will deter the filing of other frivolous claims. Defs.' Mot. at 5. The court agrees that an award of fees is warranted on both grounds.

A claim under the Copyright Act is objectively unreasonable if it "is clearly without merit or otherwise patently devoid of legal or factual basis." *ZilYen*, 958 F. Supp. 2d at 220. Conversely, a copyright claim is not objectively unreasonable if there is a "reasonable possibility" that the court would reach a different outcome on the merits of the claim. *Id.* Here, Plaintiff had no reasonable possibility of prevailing on his copyright claim. As the court found when comparing the alleged infringing lyrics to the Plaintiff's claimed infringed lyrics, "they bear little resemblance to one another and thus are not 'substantially similar.'" Mem. Op. at 5-6 (citing *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1295-96 (D.C. Cir. 2002)). The only similar aspects of the songs—the

appearance of the word "Kingdom" in both songs' titles and the use of the phrase "keys to the kingdom" in both songs' lyrics—clearly were not copyrightable. *See id.* Plaintiff should have known that those similarities were insufficient to allow his copyright claim to prevail, because the district court in *Prunté* observed that "[o]f course, titles are not protectible, and neither are short, common phrases," 699 F. Supp. 2d at 25, and the Court of Appeals affirmed the district court's dismissal of Plaintiff's claims before he filed the instant suit, *see Prunté v. Universal Music Grp.*, 425 F. Appx. 1-2 (D.C. Cir. 2011).

Plaintiff's reliance in this case on *Dawson v. Hinshaw,* 905 F.2d 731 (4th Cir. 1990), to argue that expert testimony was needed to evaluate the similarity of the songs, and therefore his claim should survive a motion to dismiss, *see* Mem. Op. at 6, did not imbue his claim with a reasonable possibility of success. As the court explained in its Memorandum Opinion, our Court of Appeals has not adopted the "flexible approach" to assessing substantial similarity adopted by the Fourth Circuit in *Dawson*. *Id.* Further, Plaintiff did not cite any case—and the court is aware of none—in which expert testimony was deemed necessary to decide whether ordinary song lyrics were substantially similar. Indeed, in Plaintiff's other copyright action, *Prunté*, the court expressly rejected the need for expert testimony regarding the issue of substantial similarity. *See Prunté v. Universal Music Grp.*, 563 F. Supp. 2d 41, 43-44 (D.D.C. 2008). He reasonably should have expected this court to do the same.

In addition to the copyright claim's objective unreasonableness, an award of attorney's fees also is warranted because of "the need . . . to advance considerations of . . . deterrence." *Fogerty*, 510 U.S. at 534 n.19. As Defendants point out, the "primary objective of the Copyright Act is to encourage the production of original literary, artistic, and music expression for the good of the public," and therefore, "a successful defense of a copyright infringement action may further the

policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright." *Id.* at 524, 527. Thus, as here, when a plaintiff pursues a meritless copyright claim without consequence, it invites others to do the same. *See Scott-Blanton v. Universal City Studios Prods. LLLP*, 593 F. Supp. 2d 171, 176 (D.D.C. 2009) (observing that, "although the need to compensate the defendants is not great in this case, the underlying purposes of the Copyright Act are served by awarding attorneys' fees to deter unnecessary and protracted proceedings, thereby encouraging objectively reasonable claims").

For more than fifteen years, Plaintiff has been a serial filer of meritless copyright actions in this court and others. Starting in 1997 in the Middle District of Florida, Plaintiff began bringing copyright infringement actions against the Walt Disney Company and others. *See Prunte v. The Walt Disney Company*, No. 04-cv-00629, Mem. Op., ECF No. 77, at 2-4 (D.D.C. Mar. 31, 2005). As Judge Bates chronicled in *Prunte v. The Walt Disney Company*, before filing an action in this District Court, Plaintiff filed five different cases against The Walt Disney Company and, in four of them, asserted copyright claims about the very same song. *Id.* Every trial and appellate court that considered his claim rejected it. *Id.* Plaintiff's copyright claim against The Walt Disney Company in this District Court—his sixth such case—met the same fate. *Id.* at 6-8.

Plaintiff's defeats did not deter him, however. Instead, he turned his focus to new targets. In 2006, he filed a complaint in this District Court against approximately 45 named defendants, including Universal Music Group and various musical artists. *See Prunté*, 699 F. Supp. 2d at 18. In that case, Plaintiff asserted copyright infringement claims as to no less than 14 different songs. *See id.* at 25-30. Judge Friedman rejected all 14 of them. *Id.* And the Court of Appeals affirmed Judge Friedman's decision in a single line of analysis: "The district court correctly determined

that the lyrics of the allegedly infringing works were not substantially similar to protectible elements of appellant's works." *See Prunté*, 425 F. Appx. at 1-2.

Still undeterred, Plaintiff then brought this case in December 2014, *see* Compl., ECF No. 1, asserting a single copyright claim as to a different song. Just as Judge Friedman had done with regard to the 14 songs at issue in *Prunté*, this court concluded that Plaintiff had utterly failed to show substantial similarity between the allegedly infringing song lyrics and his own. *See* Mem. Op. at 4-5.

Plaintiff's 15-year-long pattern of abusive and meritless copyright litigation warrants the imposition of an attorney's fee award here. Such an award may deter him from filing similar suits in the future and discourage others from doing the same. In so concluding, the court is mindful of the Supreme Court's statement in *Hughes v. Rowe*, 449 U.S. 5, 15 (1980), that "[a]n unrepresented litigant should not be punished for his failure to recognize subtle factual or legal deficiencies in his claims." That statement in *Hughes*, however, was directed primarily at claims brought by *pro se* prisoners. *See id.* (stating that "attorney's fees should rarely be awarded against" "uncounseled prisoners"). But, more importantly, Plaintiff is a repeat litigant who did not simply fail to appreciate a "subtle" deficiency in his claim. Rather, in this case, he pressed forward with a new copyright claim on grounds as dubious as the claims he advanced in *Prunté* and in earlier cases. The court, therefore, finds that an award of attorney's fees under the Copyright Act is warranted in the unique circumstances of this case.

**B. The Attorney's Fee Award**

Having determined that Defendants are entitled to an award of attorney's fees, the court must now determine the proper amount. Defendants seek two categories of fees. First, they seek fees totaling $36,699.20 for the work undertaken to dismiss Plaintiff's statutory civil rights claims

7

and his Copyright Act claim. Defs.' Reply at 1. Second, Defendants seek $21,786.90 in "fees on fees," that is, fees incurred in preparing their Rule 54 motion. Defs.' Reply at 1 n.1. The court considers each request in turn.

   1.   *Defendants' Initial Motion for Fees*

Defendants' counsel, Jenner & Block, charged Defendants $47,965.60 in fees from the start of it representation, on February 13, 2015, until it completed the briefing on Defendants' Motion to Dismiss the Amended Complaint, on March 26, 2015. *See* Defs.' Mot., Decl. of Jessica Ring Amunson, ECF No. 30-1 [hereinafter Amunson Decl.], at 3 ¶ 11, Ex. A at 6. The amount of fees Defendants seek, however, is lower: $36,699.20. That amount reflects a voluntary reduction of 20 percent of the fees actually billed to Defendants and a write-off of $2,091.60 in fees incurred by one senior partner.[2] Excluding the senior partner, counsel's invoice reflects fees incurred from three timekeepers: (1) Jessica Ring Amunson, a supervising junior partner; (2) Michelle R. Singer, an associate who did the majority of work; and (3) Cheryl L. Olson, a paralegal. Plaintiff, for his part, other than generally opposing any award of fees, does not challenge the specific amount sought by Defendants.

   a.   <u>Reasonableness of the hourly rate</u>

The court first turns to the reasonableness of the hourly rate charged by Defendants' counsel. To establish an attorney's "reasonable hourly rate," a party must show evidence of three distinct elements: (1) the attorney's billing practices; (2) the attorney's skills, experience, and reputation; and (3) the prevailing market rates in the relevant community. *See Salazar v. District of Columbia*, 809 F.3d 58, 62 (D.C. Cir. 2015). Defendants offered evidence as to the first and second elements through the Declaration of Jessica Amunson, *see* Amunson Decl. ¶¶ 9-15, but

---

[2] 0.8 x ($47,965.60 - $2,091.60) = $36,699.20.

8

offered little evidence as to the third. *See Eley v. District of Columbia*, 793 F.3d 97, 101 (D.C. 2015) (stating that it is the movant's burden "'to produce satisfactory evidence—*in addition to [her] attorney's own affidavits*—that [her] requested rates are in line with those prevailing in the community for similar services by lawyers of reasonable comparable skill, experience, and reputation.'") (quoting *Covington v. District of Columbia*, 57 F.3d 1101, 1109 (D.C. Cir. 1995)). To demonstrate the prevailing market rates in the relevant community, the Amunson Declaration offers only a hyperlink to the National Law Journal's 2014 Law Firm Billing survey. *Id.* ¶ 16. Based on that survey alone, the Amunson Declaration states that Jenner & Block's rates "are comparable to rates charged by lawyers with similar expertise who are similarly employed at large, well-respected law firms." *Id.*[3]

The cited National Law Journal survey, however, is of limited evidentiary value for purposes of establishing the prevailing market rates in Washington, D.C., for civil rights and copyright litigation. The survey provides billing rates of "partners" and "associates" at various law firms across the country. It reports that the average partner billing rate is $604 per hour and the average associate billing rate is $370. The survey does not, however, distinguish billing rates for partners and associates in terms of years of experience, the type of work performed, or the law firm's location. *Cf. Eley*, 793 F.3d at 101-102 (describing the "benefits and limitations" of two fee matricies). The National Law Journal survey, therefore, standing alone, does not provide the kind of evidence necessary to allow the court to evaluate the reasonableness of Jenner & Block's rates in this case.

Defendants have not submitted any other relevant evidence. *Cf. id.* at 101 (describing the types of evidence submitted in support of motions for attorney's fees). Nor in their moving papers

---

[3] Citing http://www.nationallawjournal.com/id=1202636785489/billing-rates-across-the-country?slreturn=20160529102710 (last visited June 30, 2016).

have Defendants cited to any cases in which a court awarded fees to a prevailing defendant in either a civil rights or copyright action. *Cf. id.* at 104 (deeming insufficient the movant's citation to four cases that concerned a subject matter different than the one at issue). As a result, the court does not have before it evidence concerning the prevailing hourly rates in civil rights and copyright litigation in Washington, D.C.

The Court of Appeals, however, recently has provided guidance that enables the court to assess the reasonableness of Jenner & Block's rates. In *Salazar* and *Eley*—both challenges to attorney's fee awards—the Court of Appeals proceeded from the premise that the *Laffey* Matrix—an attorney's fee matrix—provides a "useful starting point" for calculating the prevailing market rate. *Eley*, 793 F.3d at 100 (observing that fee matrices are "one type of evidence that 'provide[s] a useful starting point' in calculating the prevailing market rate" and the *Laffey* Matrix is the "most commonly used fee matrix"); *Salazar*, 809 F.3d at 62 (citing *Eley*). As explained in *Salazar* and *Eley*, the original *Laffey* Matrix "sets out a general guideline for awarding attorneys' fees based on experience." *Salazar*, 809 F.3d at 62; *see also Eley*, 793 F.3d at 101. Two more recently issued *Laffey*-based matrices update the original to account for inflation. One is the Legal Services Index (LSI) *Laffey* Matrix, which updates the original *Laffey* Matrix to adjust for inflation in the nationwide market for legal services using the Legal Services Index of the Nationwide Consumer Price Index (CPI). *Id*. The other—a less generous fee matrix—is prepared by the U.S. Attorney's Office for the District of Columbia, and is known as the USAO *Laffey* Matrix. Unlike the LSI *Laffey* Matrix, the USAO *Laffey* Matrix adjusts the original *Laffey* Matrix for inflation by using increases in the "All-Items" CPI in the Washington, D.C. area. *See Eley*, 793 F.3d at 101. In other words, the principal difference between the LSI *Laffey* Matrix and the USAO *Laffey* Matrix is that

the former adjusts for inflation in the legal services market across the nation, whereas the later adjusts for inflation across a host of commodities in the Washington, D.C. area.

In *Salazar*, the Court of Appeals affirmed the district court's decision to use the LSI *Laffey* Matrix in order to establish the prevailing market rate in the Washington, D.C. and for "complex federal litigation." 809 F.3d at 64. It did so because the because the district court had evidence before it that the LSI *Laffey* Matrix reflected a more accurate estimation of legal fees incurred in that case. *See id* at 64-65. By contrast, in *Eley*, the Court of Appeals rejected the use of the LSI *Laffey* Matrix because the district court had insufficient evidence before it to find that the LSI *Laffey* Matrix rates reflected the prevailing market rate for Individuals with Disabilities Act litigation in Washington, D.C. *See* 793 F.3d at 104; *see Salazar*, 809 F.3d at 64 (distinguishing *Eley* on the ground that the District had shown in *Eley* that there was a "submarket" for attorney's fees in IDEA cases lower than either of the *Laffey* Matrices).

Given the near absence of evidence submitted by Defendants to establish the prevailing market rate here, the court will rely on the more conservative USAO *Laffey* Matrix to evaluate the reasonableness of counsel's proposed hourly rates. It may be that, ordinarily, a civil rights or copyright case would rise to the level of "complex federal court litigation" that would justify application of the LSI *Laffey* Matrix approved in *Salazar*. But absent actual *evidence* that establishes that to be so, the court declines to apply the higher rates here. Instead, the USAO *Laffey* Matrix provides an appropriate benchmark by which to measure the prevailing market rate in this case.

According to the USAO *Laffey* Matrix for 2014-2015,[4] "experienced federal court litigators" with 11 to 19 years' experience should receive $460 per hour; a "senior associate" with

---

[4] USAO *Laffey* Matrix – 2014-15, *available at* https://www.justice.gov/usao-dc/civil-division.

11

five years of experience should receive $300 per hour; and a paralegal should receive $150 per hour. The three Jenner & Block timekeepers correspond to each of those three categories. Amunson was 11 years removed from law school at the time the fees were incurred in this case, Singer was five years removed, and Olson was a paralegal. Amunson Decl., Exs. C, D. Although neither attorney's biography—one was not submitted for Olson—shows prior experience in civil rights or copyright litigation, in the court's view, both possess general litigation experience and professional credentials that put them comfortably in the same class as federal court practitioners with comparable years of experience. The Jenner & Block rate, however, for each timekeeper exceeds the commensurate rate under the USAO *Laffey* Matrix. Amunson's rate was $613; Singer's rate was $502; and Olson's rate was $230. Amunson Decl., Ex. A at 6. Even when the rates are reduced by 20 percent, as Defendants have done, they remain above those established by the USAO *Laffey* Matrix: $490.40 v. $460 for Amunson; $401.60 v. $300 for Singer; and $184 v. $150 for Olson. In calculating the final fee award, the court will reduce the hourly rate of each timekeeper to her applicable USAO *Laffey* Matrix rate.

b. <u>Fees eligible for recovery</u>

Next, the court must identify the hours billed for which Defendants can recover attorney's fees. As a first step, the court will deny all fees requested that were incurred up to and including February 20, 2015 (except 0.4 hours devoted to the copyright claim on that date). It is apparent from the time entries submitted that from February 13, 2015, when Jenner & Block first began billing on this matter, up to and including February 20, 2015, Defendants' counsel primarily was occupied with responding to Plaintiff's Motion for Entry of Default, filed on February 9, 2015, when Defendants had not appeared in this matter. *See* Amunson Decl., Ex. A at 2-3; Mot. for Entry of Default, ECF No. 8. The court declines to award attorney's fees incurred to respond to a

procedural motion unrelated to the merits of the case, which arose because Defendants had not yet appeared in the matter. *See Cooper v. U.S. R.R. Ret. Bd.*, 24 F.3d 1414, 1419 (D.C. Cir. 1994) (denying a request for fees incurred for work "that did not relate to the only issue before the court").

Next, the court must exclude from the fees calculus the work done on the two claims for which fees were not recoverable: Counts Three and Six, which in essence asserted claims of common law fraud. "Hours spent solely on common law claims and statutory claims not subject to fee-shifting must be excluded to reflect the default rule that 'each party must pay its own attorney's fees and expenses.'" *Millea v. Metro-North Railroad Co.*, 658 F.3d 154, 168 (2nd Cir. 2011) (quoting *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 550 (2010)); *see also Unbelievable, Inc. v. N.L.R.B.*, 118 F.3d 795, 802 (D.C. Cir. 1997) (noting that "the Supreme Court [has] made it clear that only the Congress and not the courts can override the American Rule" that each side bears its own legal expenses). The court has conducted a line-by-line review of Jenner & Block's invoice to determine which, if any, specific tasks could be attributed to Counts Three and Six, but there were no such obvious entries. Therefore, in order to estimate the fees incurred as a result of claims for which there is no basis to award fees the court will reduce the total fees by 40 percent. Plaintiff's Amended Complaint contained five claims and only three of them—the civil rights and copyright claims—were asserted under statutes with fee-shifting provisions. As the Supreme Court observed in *Fox v. Vice*, 563 U.S. 826, 838 (2011), "[t]he essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection." Accordingly, a 40 percent reduction is warranted to exclude any fees incurred as a result of the claims for which fee shifting is not available.

Attached to this Memorandum Opinion is a chart reflecting the court's calculation of fees recoverable in defending against Plaintiff's civil rights and copyright claims, consistent with the court's discussion above. *See* Exhibit A. The court awards Defendants $13,370.40 in fees.

2. *The Motion for "Fees-on-Fees"*

Defendants also seek $21,786.90 in "fees-on-fees" incurred by their counsel in preparing their Motion for Attorneys' Fees. Defs.' Reply at 1 n.1; *see also Means v. District of Columbia*, 999 F. Supp. 2d 128, 131 n.1 (D.D.C. 2013) (observing that motions requesting recovery of fees incurred in preparing fee petitions are commonly referred to as motions for "fees-on-fees").

Here, just as it did above, the court reduces the hourly rate of Jenner & Block's timekeepers to the applicable rates set forth in the USAO *Laffey* Matrix. *See Collins v. District of Columbia*, No. 15-CV-00136 (KBJ), 2015 WL 7720464, at *9 (D.D.C. Nov. 30, 2015) (applying the rate of fees-on-fees reimbursement based on the USAO *Laffey* Matrix). Reduced to the applicable USAO *Laffey* Matrix rates, the total fees-on-fees eligible for recovery is $13,672.00.

Next, the court reduces the fees-on-fees award to reflect Defendants' degree of success on their fee petition. In *INS v. Jean*, the Supreme Court held that "fees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation." 496 U.S. 154, 163 n. 10 (1990) (indicating that a court should not award fees-on-fees to a prevailing party for time spent on aspects of the initial fees request that proved unsuccessful). Defendants sought $36,699.20 in fees. The court has awarded them $13,370.40, or 36 percent of the requested sum. The court will apply the same percentage to the eligible fees-on-fees ($13,672.00), thereby reducing that award amount to $4,921.92. Attached to this Memorandum Opinion is a chart reflecting the court's calculation of the fees awarded to Defendants in connection with their Motion for Attorney's Fees. *See* Exhibit B.

## IV. CONCLUSION

For the foregoing reason, Defendant's Motion for Attorneys' Fees is granted in part and denied in part. The court awards Defendants $13,370.40 on their initial fee petition and an additional $4,921.92 as fees-on-fees, for a total of $18,292.32. A separate Order accompanies this Memorandum Opinion.

Dated: July 1, 2016

Amit P. Mehta
United States District Judge

EXHIBIT A

## Defendants' Recovery of Fees Incurred for Motion to Dismiss

| Date | Timekeeper | Rate | Time | Total |
|---|---|---|---|---|
| 2/20/2015 | MOS | $300.00 | 0.4 | $120.00 |
| 2/21/2015 | MOS | $300.00 | 8.6 | $2,580.00 |
| 2/23/2015 | MOS | $300.00 | 10.8 | $3,240.00 |
| 2/24/2015 | CLO | $150.00 | 1.4 | $210.00 |
| 2/24/2015 | JRA | $460.00 | 2.5 | $1,150.00 |
| 2/24/2015 | MOS | $300.00 | 4.9 | $1,470.00 |
| 2/25/2015 | CLO | $150.00 | 3.7 | $555.00 |
| 2/25/2015 | JRA | $460.00 | 1.3 | $598.00 |
| 2/25/2015 | MOS | $300.00 | 1.8 | $540.00 |
| 2/26/2015 | CLO | $150.00 | 2.9 | $435.00 |
| 2/26/2015 | JRA | $460.00 | 0.6 | $276.00 |
| 2/26/2015 | MOS | $300.00 | 7.2 | $2,160.00 |
| 3/2/2015 | MOS | $300.00 | 0.2* | $60.00 |
| 3/10/2015 | JRA | $460.00 | 0.5 | $230.00 |
| 3/10/2011 | MOS | $300.00 | 4.2 | $1,260.00 |
| 3/11/2015 | MOS | $300.00 | 8.1 | $2,430.00 |
| 3/13/2015 | JRA | $460.00 | 1.0 | $460.00 |
| 3/13/2015 | MOS | $300.00 | 5.2 | $1,560.00 |
| 3/14/2015 | MOS | $300.00 | 0.1 | $30.00 |
| 3/15/2015 | JRA | $460.00 | 1.0 | $460.00 |
| 3/15/2015 | MOS | $300.00 | 4.0 | $1,200.00 |
| 3/16/2015 | CLO | $150.00 | 2.2 | $330.00 |
| 3/16/2015 | MOS | $300.00 | 1.7 | $510.00 |
| 3/17/2015 | MOS | $300.00 | 0.7 | $210.00 |
| 3/26/2015 | MOS | $300.00 | 0.7 | $210.00 |
| **Total** | | | | **$22,284.00** |
| **60% of Total** | | | | **$13,370.40** |

*On 3/2/2015 MOS billed 0.4 hours. However, the billing entry indicates that 0.2 of those hours were spent "[r]eview[ing] court order denying motion for default." Because the Defendants are not to recover for fees incurred working on their Motion for Default, the court has excluded those 0.2 hours from the fees ultimately awarded. Also on 3/2/2015, JRA billed 0.2 hours "[r]eview[ing] court order on default and summariz[ing] same for S. Bauman." The court similarly has excluded those 0.2 hours from the fees ultimatley awarded.

## Defendants' Recovery of Fees Incurred for Motion for Attorneys' Fees

| Date | Timekeeper | Rate | Time | Total |
|---|---|---|---|---|
| 9/17/2015 | JRA | $460.00 | 0.3 | $138.00 |
| 9/17/2015 | MOS | $300.00 | 0.6 | $180.00 |
| 9/18/2015 | JRA | $460.00 | 0.5 | $230.00 |
| 9/18/2015 | MOS | $300.00 | 0.9 | $270.00 |
| 9/23/2015 | JRA | $460.00 | 0.5 | $230.00 |
| 9/23/2015 | MOS | $300.00 | 1.3 | $390.00 |
| 9/25/2015 | JRA | $460.00 | 0.7 | $322.00 |
| 9/25/2015 | MOS | $300.00 | 3.2 | $960.00 |
| 9/28/2015 | JRA | $460.00 | 0.7 | $322.00 |
| 9/28/2015 | MOS | $300.00 | 7.9 | $2,370.00 |
| 9/29/2015 | JRA | $460.00 | 1.5 | $690.00 |
| 9/29/2015 | MOS | $300.00 | 6.6 | $1,980.00 |
| 9/30/2015 | JRA | $460.00 | 0.6 | $276.00 |
| 9/30/2015 | MOS | $300.00 | 0.3 | $90.00 |
| 10/1/2015 | JRA | $460.00 | 0.5 | $230.00 |
| 10/1/2015 | MOS | $300.00 | 2.1 | $630.00 |
| 10/1/2015 | CLO | $150.00 | 1.5 | $225.00 |
| 10/15/2015 | JRA | $460.00 | 0.4 | $184.00 |
| 10/15/2015 | MOS | $300.00 | 2.2 | $660.00 |
| 10/18/2015 | MOS | $300.00 | 4.9 | $1,470.00 |
| 10/19/2015 | MOS | $300.00 | 1.4 | $420.00 |
| 10/20/2015 | JRA | $460.00 | 0.6 | $276.00 |
| 10/20/2015 | MOS | $300.00 | 0.1 | $30.00 |
| 10/20/2015 | CLO | $150.00 | 0.5 | $75.00 |
| 10/21/2015 | JRA | $460.00 | 0.1 | $46.00 |
| 10/21/2015 | MOS | $300.00 | 0.1 | $30.00 |
| 10/21/2015 | CLO | $150.00 | 0.8 | $120.00 |
| 10/22/2015 | JRA | $460.00 | 0.3 | $138.00 |
| 10/22/2015 | MOS | $300.00 | 2.3 | $690.00 |
| **Total** | | | | **$13,672.00** |
| **36% of Total** | | | | **$4,921.92** |